UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD GRATTON,

Plaintiff,

v.

WILLIE SMITH et al.,

Defendants.
______________________________/

Case No. 1:12-cv-526

Honorable Janet T. Neff

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Gerald Gratton is a state prisoner incarcerated by the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF), where the events giving rise to the complaint occurred. Plaintiff names the following employees of DRF as Defendants: Warden Willie Smith, Deputy Warden (unknown) Krick, Resident Unit Manager (RUM) C. Miller, Assistant Resident Unit Supervisor (ARUS) B. Showers, Health Unit Manager (HUM) E. McKenna, Physician Assistant Rosalyn Jindal, and Registered Nurses Nancy L. Burns, Laura Kinder and S. Moore.

Plaintiff alleges that in December and January 2012 he complained to ARUS Showers about being transferred from the Adrian Correctional Facility to DRF. He also complained that he was placed in an "illegal handicap room," but Showers did not respond. (Compl., docket #1, Page ID#3.)

Plaintiff also alleges that the conditions of his confinement at DRF are "illegal"for the following reasons:

> . . . overcrowded living conditions, improper living space, insufficient showers, toilets, urinals, wash basins, lack of emergency panic button in the room, no handicap accessible ramp(s) [or] stairways, and no real or actual required handicapped assessment living in DRF housing unit living room.
>
> Plaintiff is being illegally kept in a housing unit living room that was actually built to handle one inmate; however, DRF officials are illegally keeping two inmates in the same room[, which] amount[s] to double-bunking that is totally illegal. . . . There is also no legally required handicapped stairway access ramp(s) for the wheelchairs to use in case of an emergency.
>
> The facility does not provide the legally appropriate space where less than 60 square feet of living space is available. . . .

(*Id.*) Plaintiff further contends that inmates are not allowed to take showers lasting longer than fifteen minutes, and sixty inmates are required to share two showers and three toilets. (*Id.*)

Plaintiff filed a prisoner grievance stating that "DRF-West was willfully and purposefully depriving him of his legal rights." (*Id.*) Deputy Warden Krick and RUM Miller rejected the grievance at Step I of the grievance process. Plaintiff claims that ARUS Showers and Warden Smith are "deliberately an[d] intentionally refusing to address the issue." (*Id.*)

In addition, from September 2006 until Plaintiff arrived at DRF in 2012, he was given a Special Accommodation Notice (SAN) by health care officials at the MDOC's Central Office. The SAN allowed him to have cotton blankets, "extra time to eat," and "early chow." (*Id.* at Page ID##3-4.) On February 14, 2012, he sent a request to health services to be given his SAN. On February 17, Nurse Burns "took away" the SAN, "all except for wheelchair which was given a two week time limit." (*Id.* at Page ID#3.) Plaintiff alleges that he needs the SAN because he "has had two strokes, three heart attacks, take[s] medication for high/low blood pressure, [has an] enlarged bladder, [had] surgery to remove an enlarged prostate, wear[s a] catheter, ha[s] difficulty urinating and [having] bowel movement, [has a] broken blood vein" and has "pain" on the "entire left side" of his body. (*Id.* at Page ID#4.)

Plaintiff filed a grievance regarding the loss of his SAN, but Nurse Moore and HUM McKenna rejected the grievance at Step I on the basis that Plaintiff did not have an "active SAN"; rather, Plaintiff had a "temporary detail for the necessary needs." (*Id.*) Plaintiff appealed the denial of his grievance, arguing that the Step I response was "totally discriminatory, unwillingly and intentionally designed to treat Plaintiff unfavorably as well as unequally on the basis of his handicap

and disability." (*Id.*) Nurse Kinder allegedly "reviewed Plaintiff's file [and] concluded that the Medical Services Provider (MP) decision [appeared to be] inapp[ro]priate." (*Id.*)

Plaintiff brings the instant action "alleging retaliation, harassment, due process violations, defamation of character, mental anguish[,] and federal constitutional violations." (*Id.*) As relief, he requests an injunction to restore his SAN and $250,000 from each Defendant. (*Id.* at Page ID#5.)

**Discussion**

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that

the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Eighth Amendment**

Plaintiff contends that his conditions of confinement are illegal because inmates are being forced to double-bunk in crowded cells, the cells are not equipped with panic buttons, there is an insufficient number of showers and bathroom facilities for use by inmates, and there are no handicap or wheelchair-accessible stairs or ramps for use in an emergency. In addition, Defendants are not providing specific accommodations for his medical conditions.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346). To assert a claim based on the prisoner's conditions of confinement, the conditions must result in the deprivation of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. To prevail on an Eighth Amendment claim, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993).

With respect to Plaintiff's allegations regarding the crowded cell conditions and the inadequate facilities at DRF, the Supreme Court has held that prison overcrowding, standing alone, does not violate the Eighth Amendment. *See Rhodes*, 452 U.S. at 348. Instead, Plaintiff must show that the crowded conditions led to deprivations of essential food, medical care, sanitation, or other necessities. *Id.* Plaintiff's bare allegations do not make this showing. There is no indication that Plaintiff was deprived of access to facilities when they were needed, or that the prison's conditions otherwise deprived him of basic needs or posed a risk to his health. *Cf. Agramonte v. Shartle*, No. 10–3760, 2012 WL 3104506, at *2 (6th Cir. Aug. 1, 2012) (rejecting a prison overcrowding claim because "the plaintiffs have not alleged that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation"). The Court is not

required to accept Plaintiff's conclusory assertion that the prison's facilities are illegal or inadequate. *See Iqbal*, 556 U.S. at 678-79.

Similarly, Plaintiff's allegations regarding the lack of a panic button and the lack of wheelchair or handicap-accessible ramps or stairways for use in the event of an emergency fail to state a claim because there is no indication that these conditions subjected Plaintiff to a substantial risk of serious harm, much less that Defendants were deliberately indifferent to that risk. Plaintiff does not indicate what sort of emergency would require such facilities; thus, it is impossible to discern whether their absence posed a substantial risk of harm to Plaintiff. *Cf. Agramonte*, 2012 WL 3104506, at *2 (rejecting as "speculative" a claim that an increase in the number of inmates confined to wheelchairs at a particular prison, and an increase in the number of inmates overall, would make it difficult for inmates at that prison to evacuate the building in the event of a fire). Indeed, it is not even clear that the lack of wheelchair or handicap-accessible exits would have impacted Plaintiff, as he does not allege that he was bound to a wheelchair or was otherwise impaired in his ability to access emergency exits without them.

Finally, Plaintiff's allegations regarding his medical conditions and the loss of his SAN do not state a claim. It is true that the Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 102, 103-05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). However, while Plaintiff allegedly suffers from several medical conditions that might pose a risk of serious harm if left untreated, he does not allege that Defendants have failed to treat those conditions. Moreover, none of his allegations suggests that Defendants' failure to issue the SAN, or to provide him cotton

blankets, early meals, and/or extra meal time, subjects him to a substantial risk of serious harm. Consequently, Plaintiff does not state an Eighth Amendment claim.

**B. Retaliation**

Plaintiff also claims that Defendants retaliated against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. See *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that a Defendant retaliated against him because of any protected conduct. Accordingly, his conclusory allegation fails to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### C. Fourteenth Amendment (procedural due process)

Plaintiff also contends that Defendants have deprived him of due process, which the Court construes as a procedural due process claim under the Fourteenth Amendment.[1] "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer–Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Thus, the *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson*, 545 U.S. at 222-23.

---

[1]To the extent that Plaintiff asserts that Defendants' violated his right to *substantive* due process under the Fourteenth Amendment, his claim is more properly analyzed under the Eighth Amendment because the latter is a "more explicit textual source of constitutional protection" for such a claim. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

Plaintiff does not allege that he was deprived of a protected interest. Plaintiff does not have a constitutionally-protected right to an effective prison grievance procedure, *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005), or to remain at a particular prison facility, *Meachum*, 427 U.S. at 228-29. Likewise, he does not have protected interest in retaining special privileges associated with a SAN, as a deprivation of such privileges does not affect the duration of his sentence or impose an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. Without a protected interest at stake, therefore, Plaintiff cannot successfully claim that his procedural due process rights were violated. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

**D. ADA**

The only federal statute identified in the complaint is 42 U.S.C. § 1983, but because Plaintiff's allegations concern Defendants' failure to provide certain accommodations for his medical conditions, the Court generously construes his *pro se* complaint as raising a possible claim under Title II of the Americans with Disabilities Act of 1990 (ADA), 104 Stat. 337, as amended, 42 U.S.C. § 12131 *et seq.*

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," § 12131(1). [The Supreme Court has] previously held that this term includes state prisons. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Title II authorizes

> suits by private citizens for money damages against public entities that violate § 12132. *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006). Thus, to state an ADA claim, Plaintiff must allege that Defendants have prevented him from participating in or receiving the benefits of services, programs, or activities available to other inmates. *See id.* There is no indication, however, that Defendants have prevented Plaintiff from participating in or receiving the benefit of services, programs, or activities available to other prisoners. Consequently, Plaintiff does not state an ADA claim. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (noting that an allegation that prison officials failed to provide a specific accommodation is not sufficient, in itself, to state an ADA claim).

**E. Discrimination**

Plaintiff also alleges that the Defendants Moore and McKenna discriminated against him because of his handicap or disability when they responded to his grievance regarding the loss of his SAN; such allegations arguably raise a claim under the Fourteenth Amendment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (noting that the equal protection clause of the Fourteenth Amendment prohibits "intentional and arbitrary" discrimination by the state). In addition, both the ADA and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, prohibit discrimination on the basis of an individual's disability. *See* 42 U.S.C. § 12132 (prohibiting public entities from discriminating on the basis of an individual's disability in the provision of services, programs, or activities); 29 U.S.C. § 794(a) (prohibiting a program receiving federal funding from discriminating against an "otherwise qualified individual with a disability"). Plaintiff's allegations against Defendants Moore and McKenna are wholly conclusory, however; there is no indication that they

treated Plaintiff differently from other inmates. Thus, he does not state a viable discrimination claim against them. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

**F. Other claims**

Finally, Plaintiff broadly claims that Defendants are liable for harassment and defamation of his character. It is not at all clear from the complaint, however, which conduct gives rise to such claims, or which Defendants the claims are asserted against. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Plaintiff's generalized assertions of misconduct fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Consequently, the foregoing claims also will be dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: September 14, 2012

/s/ Janet T. Neff
Janet T. Neff
United States District Judge